## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| YODIE BAKER, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 09-1801 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 22 |
| | : | | |
| D.C. PUBLIC SCHOOLS *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S
### MOTION FOR ATTORNEY'S FEES & COSTS

## I. INTRODUCTION

This matter comes before the court on the plaintiff's motion for attorney's fees and costs. The plaintiff is the mother of a minor child who is entitled to the protections of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq.* She commenced this action seeking $2,751.50 in attorney's fees that she incurred while prosecuting an administrative claim pursuant to the IDEA. The defendants, the District of Columbia Public Schools ("DCPS") and the District of Columbia, concede that the plaintiff prevailed in the underlying administrative proceeding, but dispute the reasonableness of the requested fees.

Because the plaintiff is the prevailing party and because some of the requested fees are reasonable, the court grants in part the plaintiff's motion for attorney's fees and costs. Because certain fee requests by the plaintiff are inappropriate and deficient, however, the court denies in part the plaintiff's motion. Accordingly, the court grants the plaintiff an award of reduced fees.

## II. FACTUAL & PROCEDURAL BACKGROUND

The plaintiff's minor child is enrolled in the District of Columbia Public Schools and is entitled to the protections afforded by the IDEA. Am. Compl. ¶ 4. In December 2008, the plaintiff filed an administrative due process complaint against the DCPS and the District of Columbia, alleging that the defendants failed to provide a Free and Appropriate Public Education ("FAPE") to her child as required under the IDEA. *Id.* After a hearing on the merits in February 2009 ("merits hearing"), the hearing officer issued a Hearing Officer Determination ("HOD") granting the plaintiff the relief that she had sought. *Id.* at ¶ 5. During the course of such administrative proceedings, the plaintiff had been represented by the Law Offices of Christopher N. Anwah. *Id.* at 4.

The plaintiff then submitted an IDEA fee petition for attorney's fees and costs to the defendants, for a total amount of $4,105.80. Pl.'s Mot. at 1-2. The defendants only reimbursed the plaintiff in the amount of $1,202.50, however, creating a difference of $2,751.50 between what the plaintiff believed she was owed and what the defendants had paid.[1] *Id.*; Defs.' Opp'n, Ex. A, Objections to Yodie Baker Invoice.

In August 2009, the plaintiff filed an action in the Superior Court of the District of Columbia, seeking to recover the $2,751.50 outstanding balance on her IDEA fee petition. Am. Compl. ¶ 4. The following month, the defendants removed the action to this court. *See* Notice of Removal. The plaintiff then filed an amended complaint in July 2010. *See generally* Am. Compl. Subsequently, after attempts at mediation proved unsuccessful, the plaintiff filed the instant motion for attorney's fees and costs. *See generally id.* In her motion, the plaintiff

---

[1]       The plaintiff conceded that certain charges, which total $151.80, are not owed. Pl.'s Mot. at 2. The final attorney's fee award will therefore be reduced accordingly.

continues to seek the $2,751.50 that she contends is still due.  Pl.'s Mot. at 2.  With this motion

ripe for consideration, the court turns to the parties' arguments and to the applicable legal

standards.


## III.  ANALYSIS

### A.  Legal Standard for Attorney's Fees Under the IDEA

Federal Rule of Civil Procedure 54(d) requires that a party seeking "attorney's fees and

related non-taxable expenses" must file a motion with the court.  FED. R. CIV. P. 54(d)(2)(A).

The motion "must specify the judgment and the statute, rule, or other grounds entitling the

movant to the award."  FED. R. CIV. P. 54(d)(2)(B)(ii).  It must also state the amount sought in

attorney's fees, or provide a fair estimate of such amount.  FED. R. CIV. P. 54(d)(2)(B)(iii); *see*

*also Herbin v. District of Columbia*, 2006 WL 890673, at *2 (D.D.C. Apr. 4, 2006).

The IDEA allows the parents of a disabled child to recover "reasonable attorney['s] fees"

if they are the "prevailing party."  20 U.S.C. § 1415(i)(3)(B).  Thus, when the court determines

an appropriate amount of attorney's fees, it must engage in a two-step inquiry.  First, the court

must determine whether the party seeking attorney's fees is the prevailing party.  *Id.*  A

prevailing party "is one who has been awarded some relief by a court."  *Buckhannon Bd. & Care*

*Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001); *Alegria v.*

*District of Columbia*, 391 F.3d 262, 264-65 (D.C. Cir. 2004) (applying *Buckhannon* in the IDEA

context).

Second, the court should determine whether the attorney's fees sought are reasonable.  20

U.S.C. § 1415(i)(3)(B).  "The most useful starting point for determining the amount of a

reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Blackman v. District of Columbia*, 397 F. Supp. 2d 12, 14 (D.D.C. 2005) (applying *Hensley* in the IDEA context).  An attorney's hourly rate for IDEA actions in the District of Columbia is typically considered reasonable if it conforms to the *Laffey* Matrix, a chart of hourly rates based upon attorneys' respective years of experience.  *Lopez v. District of Columbia*, 383 F. Supp. 2d 18, 24 (D.D.C. 2005) (citing *Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 25 (D.D.C. 2004)); *see also* 20 U.S.C. § 1415(i)(3)(C) (stating that attorney's fees awards "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished").

The plaintiff bears the burden of demonstrating that the number of hours that its counsel has spent on a particular task is reasonable.  *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41, 45 (D.D.C. 2004).  The plaintiff may satisfy this burden "by submitting an invoice that is sufficiently detailed [in order] to 'permit the District Court to make an independent determination [of] whether or not the hours claimed are justified.'"  *Id.* (citing *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)).  Once the plaintiff has provided the court with such information, a "presumption arises [in the plaintiff's favor] that the number of hours billed is reasonable[,] and the burden shifts to the defendants to rebut the plaintiff's showing of reasonable hours."  *Herbin*, 2006 WL 890673, at *5.

### B.  The Court Grants in Part and Denies in Part the Plaintiff's
### Motion for Attorney's Fees

**1.  The Reasonableness of the Number of Hours Billed by the Plaintiff's Counsel[2]**

#### a.  Itemizing Each Attorney's Respective Tasks

The plaintiff has submitted to the court an invoice for $2,751.50 that outlines her

attorney's fees and costs.  Pl's Mot., Ex. A, Invoice of Billed Hours.  The defendants allege that

the plaintiff's fee petition is unacceptably vague because it does not identify the individual

attorney who performed each respective task.  Defs.' Opp'n at 6-7.  The defendants argue that by

neglecting to delineate the work that each attorney performed, the plaintiff has failed to adhere to

the DCPS Guidelines for the Payment of Attorney Fees in IDEA Matters ("DCPS Guidelines"),

which provide specific instructions as to how to submit a fee petition.  *Id.*  As a result, the

defendants assert, the court lacks "sufficient information to determine whether the claimed rates

are appropriate for the work that was performed."  *Id.*

The plaintiff counters that she complied with the DCPS Guidelines by including a "user

summary" at the end of her invoice.  Pl.'s Reply at 3.  She notes that the summary lists the names

of all staff members who worked on the case, the total number of hours that each expended on

the case, each staff member's respective hourly rate and the total dollar amount that each billed.

*Id.*  The plaintiff further contends that the DCPS Guidelines do not require identification of each

individual attorney who performed specific legal activities, and that the defendants have offered

no legal authority to establish this purported requirement.  *Id.* at 7.

A fee application must provide sufficient detail so as to allow the court to make an

---

2       As a threshold matter, the court notes that the defendants do not dispute that the plaintiff is the
        prevailing party in the underlying IDEA suit.  *See generally* Defs.' Opp'n at 1.  Indeed, because
        the plaintiff succeeded on her claim in the merits hearing, she is the prevailing party and is
        therefore entitled to recover reasonable attorney's fees.  *See Buckhannon*, 532 U.S. at 603.

independent determination of whether the charges are reasonable. *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327. The plaintiff's invoice "need not present the exact number of minutes spent[,] nor the precise activity to which each hour was devoted[,] nor the specific attainments of each attorney." *Holbrook*, 305 F. Supp. 2d at 45 (quoting *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327); *see also Smith v. District of Columbia*, 466 F. Supp. 2d 151, 158 (D.D.C. 2006). Yet a fee petition that does not identify the specific attorneys who performed each respective activity is considered insufficiently detailed. *Gray v. District of Columbia*, 2011 WL 1561553, at *2 n.5 (D.D.C. Apr. 26, 2011). Without such information, the court is unable to evaluate whether an attorney's hourly billable rate and billed hours are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Blackman v. District of Columbia*, 397 F. Supp. 2d 12, 14 (D.D.C. 2005) (applying *Hensley* in the IDEA context).

Here, the plaintiff's failure to match the tasks with the respective attorneys who undertook them creates ambiguity as to whether the task was performed by an attorney or a paralegal. Moreover, if the task was indeed carried out by an attorney, the plaintiff's failure to identify that person by name leaves uncertainty as to his or her level of experience. Because the fee petition fails to provide sufficient detail as to who undertook each individual activity, the court cannot ascertain whether the hourly billing rate for each respective task is reasonable, and therefore cannot determine whether the plaintiff's overall request for attorney's fees is reasonable.

Even if the plaintiff's fee petition is somewhat deficient, however, complete denial of fees is inappropriate. *See Jordan v. Dep't of Justice*, 691 F.2d 514, 518-19 (D.C. Cir. 1982) (holding that complete denial of fees should be reserved for only extreme situations, such as

6

when the petitioner offers no affidavits or timesheets, or when the application is filed in bad faith).  The court may, instead, reduce the overall fee award to account for such deficiencies.  *See Hensley*, 461 U.S. at 433 (noting that "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly"); *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004) (reducing overall fee award by fifty percent where documentation of time records was deficient); *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (applying an overall reduction where time entries were inadequate).  The court accordingly reduces the overall fee award by twenty-five percent to account for these and, as indicated below, other deficiencies in the plaintiff's fee petition.

### b.  Clerical and Other Non-Professional Services

The defendants argue that the plaintiff's counsel inappropriately billed for clerical tasks, a category of activities that is not compensable under the IDEA.  Defs.' Opp'n at 18.  They therefore contend that the 3.63 hours billed for administrative work should be disallowed from the plaintiff's fee petition, thereby reducing the total attorney's fees amount overall.  *Id.* at 19.  The plaintiff counters that these tasks were necessary, *de minimis* clerical functions that cannot be separated from clearly billable work.  Pl.'s Mot. at 7-8.

Pure clerical tasks are not reimbursable in an award of attorney's fees.  *See Role Models*, 353 F.3d at 973 (stating that "purely clerical or secretarial tasks are not reimbursable at either attorney or paralegal rates" (quoting *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989))); *Michigan v. Envtl. Prot. Agency*, 254 F.3d 1087, 1095-96 (D.C. Cir. 2001) (holding that "purely clerical tasks" are not reimbursable "because they ought to be considered part of normal administrative overhead").  By contrast, certain *de minimis* clerical tasks may be reimbursable if

they cannot be separated from legal activities.  *Cf. Lopez*, 383 F. Supp. 2d at 25 (explaining that charges for "filing" motions were not reimbursable because they were purely clerical, not *de minimis*).

In this case, the defendants declined to reimburse the plaintiff for activities such as "updated [the] case file" and "fax of [the] complaint."  *See* Pl.'s Mot., Ex. A; Defs.' Opp'n, Ex. A.  Because these activities were purely clerical, they are not compensable under the IDEA.  *See Jackson v. District of Columbia*, 603 F. Supp. 2d 92, 98 (D.D.C. 2009) (denying reimbursement for charge described as "create file; made copies; faxed document").  Accordingly, rather than deny reimbursement for all charges that the defendants claim are clerical, the court has factored any purely clerical activities into its overall reduction of the total fee award.

### c.  Entries That Are Vague and Lack Specificity

The defendants further contend that the descriptions of certain charges are so vague that they deprive the court of the ability to determine whether such hours were reasonably expended.  Defs.' Opp'n at 20.  The defendants therefore argue that an additional 1.75 hours should be disallowed from the plaintiff's fee petition, reducing the total award by $350.00.  *Id.* at 21.  By contrast, the plaintiff insists that these charges are sufficiently detailed and that including more detailed information would breach the rule of attorney-client confidentiality.  Pl.'s Mot. at 8-9.

As noted earlier, a fee request "need not present the exact number of minutes spent nor the precise activity to which each hour was devoted," but the application must still be sufficiently detailed to allow the court to determine whether the hours claimed are reasonable.  *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327.  Where adequate time records are not kept, the court may reduce the overall fee.  *See Hensley*, 461 U.S. at 433.

8

The defendants object to entries such as "Reviewed documents from Spingarn" and "Teleconference with mother."  *See* Pl.'s Mot., Ex. A; Defs.' Opp'n, Ex. A.  These descriptions are unintelligible and therefore inadequate because they prevent the court from being able to make an independent determination of whether the hours expended behind such tasks are reasonable.  *See Dickens v. Friendship-Edison P.C.S.*, 724 F. Supp. 2d 113, 124-25 (D.D.C. 2010) (holding that entries such as "conference with parent" and "telephone call to DCPS" were vague and reducing overall fee award by ten percent); *Clark v. District of Columbia*, 674 F. Supp. 2d 149, 158-59 (D.D.C. 2009) (holding that time entries such as "preparation for hearing" or "preparation for school visit" were too vague and reducing overall fee award by twenty-five percent); *Coleman v. District of Columbia*, 2007 WL 1307834, at *7 (D.D.C. May 3, 2007) (holding that entries such as "conference with co-counsel" lacked sufficient detail).  Accordingly, the court has factored the insufficient detail of the plaintiff's charges into its overall reduction of the total fee award.

### d.  Duplicative Charges

The defendants contend that certain charges in the plaintiff's invoice are duplicative and therefore not reimbursable.  Defs.' Opp'n at 21.  The defendants thus argue that 2.92 hours should be further disallowed from the plaintiff's fee petition, reducing the total by an additional $959.00.  *Id.* at 21.  The plaintiff counters that some of these seemingly repetitive activities were necessary, instead of being duplicative.  Pl.'s Mot. at 10.  She notes, for example, that she had to re-visit the case file after the defendants failed to comply with an existing HOD.  *Id.*

The number of hours that an attorney expends on a task may be deemed excessive if it involves "duplication of effort."  *See Role Models*, 353 F.3d at 972 (reducing fee award for

duplicative work, including charges by two individuals for filing the same brief); *see also*

*Hensley*, 461 U.S. at 434 (hours that are "excessive, redundant, or otherwise unnecessary" should

be excluded from a fee petition).  The defendants here object to entries on the plaintiff's invoice

that state, "Reviewed doc," "Reviewed complaint" and "Reviewed doc & case file."  *See* Defs.'

Opp'n, Ex. A.  Yet the defendants offer no explanation beyond a conclusory statement as to why

such charges are duplicative, and the court therefore declines to eliminate them entirely from the

fee petition.  *See Bucher v. District of Columbia*, 2011 WL 1356761, at *7 (D.D.C. Apr. 11,

2011) (holding that the plaintiff's charges were not duplicative even though the language of the

entries in question was similar to the language of other entries); *Kingsberry v. District of*

*Columbia*, 2005 WL 3276193, at *4 (D.D.C. Aug. 9, 2005) (holding that charges for two

individuals preparing the complaint were not duplicative).  To the extent that the descriptions of

the disputed charges are unreasonably vague, the court, as previously explained, has already

factored the vague charges into its overall 25% reduction of the fee award.  *See supra* Part

III.B.1.c; *see also, e.g.*, as noted earlier, *Dickens*, 724 F. Supp. 2d at 124-25 (holding that charges

such as "[c]onference with parent" and "[p]repared documents for child's advocate" were

inadequately detailed and vague, thus warranting a reduced fee award).

### 2.  The Reasonableness of the Plaintiff's Attorneys' Respective Hourly Rates

#### a.  The Court Properly Applies the *Laffey* Matrix to Determine Fee Awards

The plaintiff urges the court to adopt an "adjusted" version of the *Laffey* Matrix when

calculating the proper attorney hourly rate because it is a better representation of prevailing

market rates than the standard version.  *See* Pl.'s Reply at 4.  The defendants, however, assert

that the plaintiff is not entitled to *Laffey* rates, adjusted or otherwise, because IDEA proceedings

10

are "not the type of complex federal litigation for which *Laffey* rates were adopted." Defs.'
Opp'n at 9. Instead, the defendants insist, the DCPS Guidelines contain the appropriate fee
schedule that should be applied ("DCPS fee schedule"). *Id.* at 10. The plaintiff counters that the
DCPS fee schedule is "grossly antiquated," and that it does not allow for any upward adjustment
to account for standard of living increases or inflation. Pl.'s Mot. at 5.

   This court has previously held that attorney's fees in IDEA actions are presumptively
reasonable if they conform to the *Laffey* Matrix. *See Jackson v. District of Columbia*, 696 F.
Supp. 2d 97, 102 (D.D.C. 2010) (holding that the *Laffey* Matrix is the proper formula to
determine the prevailing market rate for legal services rendered in connection with IDEA
administrative proceedings). Other members of this court have reached similar conclusions.
*See, e.g.*, *Brown v. Jordan P.C.S.*, 539 F. Supp. 2d 436, 438 (D.D.C. 2008) (holding that the
plaintiffs' hourly rates were reasonable because they conformed to the updated *Laffey* Matrix and
were customary for similar cases); *Kaseman*, 329 F. Supp. 2d at 25-26 (holding that the
plaintiffs' counsel's rate was reasonable because it was below the applicable *Laffey* Matrix rate);
*Nesbit v. District of Columbia*, Civ. No. 01–2429 (D.D.C. Nov. 4, 2003) (Order at 1) (holding
that an hourly billing rate in accordance with the *Laffey* Matrix was reasonable).

   Furthermore, this court has already rejected the suggestion that IDEA administrative
litigation is categorically less complex than other forms of litigation, and reaffirms that IDEA
cases are sufficiently complex to allow the application of the *Laffey* Matrix. *See Jackson*, 696 F.
Supp. 2d at 102 (holding that IDEA administrative proceedings, which require expert testimony
regarding whether a student has been denied a FAPE, are sufficiently complex to warrant
application of the *Laffey* Matrix); *Nesbit*, Civ. No. 01–2429 (D.D.C. Nov. 4, 2003) (Order at 1)

11

(refusing to create an exception to the application of the *Laffey* Matrix for IDEA litigation); *see also Cox*, 754 F. Supp. 2d at 76 (holding that counsel must have specialized knowledge of the bureaucracy and practices of DCPS to handle IDEA cases).  Similarly, this court has rejected the application of the DCPS fee schedule to determine prevailing attorney rates for IDEA cases.  *See Jackson*, 696 F. Supp. 2d at 103 (declining to apply the DCPS fee schedule because the defendant provided no evidence to show how it represented prevailing market rates and because precedent supported application of the *Laffey* Matrix).  The defendants here have not offered any evidence to indicate the methodology by which the DCPS fee schedule was calculated, nor why it should be applied in this case.  *See Cox*, 754 F. Supp. 2d at 76 (holding that the *Laffey* Matrix should apply because the defendant offered "no reasoned defense for its own Guidelines").  The court therefore declines to apply the DCPS fee schedule to this case.

With respect to the plaintiff's request to apply an adjusted *Laffey* Matrix, the court notes that two versions of the *Laffey* Matrix exist in the District of Columbia: the "U.S. Attorney's Office *Laffey* Matrix" and the "Adjusted *Laffey* Matrix."  *See Smith v. District of Columbia*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006); *see also Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995) (noting that "plaintiffs may point to such evidence as an updated version of the *Laffey* Matrix or the U.S. Attorney's Office Matrix, or their own survey of prevailing market rates in the community").  The U.S. Attorney's Office Matrix "calculates the matrix rate for each year by adding the change in the overall cost of living, as reflected in the Consumer Price Index ("CPI") for the Washington, D.C. area for the prior year."  *Smith*, 466 F. Supp. 2d at 156; *see also* U.S. Atty's Office for D.C. *Laffey* Matrix 2003-2010, available at http://www.justice.gov/usao/dc/divisions/civil_laffey_matrix_8.html (last visited Aug. 8, 2011).

By contrast, the Adjusted *Laffey* Matrix, offered by the plaintiff, "calculates the matrix rates for each year by using the legal services component of the CPI rather than the general CPI on which the U.S. Attorney's Office Matrix is based."  *See Smith*, 466 F. Supp. 2d at 156 (quoting *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 14-15 (D.D.C. 2000)).

Although both matrices have been approved for use as evidence of prevailing market rates, this court has consistently applied the U.S. Attorney's Office *Laffey* Matrix.  *See, e.g.*, *Jackson*, 696 F. Supp. 2d at 104.  Accordingly, the court adopts the U.S. Attorney's Office version of the *Laffey* Matrix in order to determine the prevailing market rate for attorney's fees in this case.

### b.  Applicable Hourly Rates for the Plaintiff's Attorneys

The defendants offer some additional objections to the plaintiff's requested hourly billing rates.  First, they contend that because the plaintiff's fee petition is impermissibly vague, they are unable to determine the reasonableness of the rates that were used to calculate the amount of requested attorney's fees.  Defs.' Opp'n at 6-7.  Second, the defendants insist that the plaintiff has failed to meet her burden of establishing her counsel's qualifications and experience, asserting that the only pieces of evidence that she has provided are "conclusory allegations, insufficient to support an award" of attorney's fees.  *Id.* at 7-9.  The defendants further argue that the sworn declaration from one of the plaintiff's attorneys does not include information about whether the plaintiff's attorneys have been admitted to the District of Columbia Bar ("D.C. Bar"), nor any indication of the prevailing market rates that are enjoyed by special education attorneys.  *Id.* at 8-9.

The plaintiff responds that the "user summary" at the end of her invoice provides

13

sufficient detail by listing the name of each staff member who worked on the case, the total number of hours that each expended, their respective hourly rates and the total dollar amount that each billed.  Pl.'s Reply at 3.  Furthermore, she contends that her attorney's sworn declaration contains sufficient proof of her counsel's qualifications, and that she has satisfied her burden of establishing the reasonableness of her requested rates.  *Id.*

A party that requests attorney's fees must submit evidence showing "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community."  *See Covington*, 57 F.3d at 1107 (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).  The prevailing market rate in the *Laffey* Matrix is "but one of the elements needed to establish the reasonableness of a billing rate sought in a fee application." *Jackson*, 696 F. Supp. 2d at 104; *see also Covington*, 57 F.3d at 1109 (holding that plaintiffs may provide evidence to supplement the *Laffey* Matrix, including fees awarded to attorneys with similar qualifications in comparable cases).  The prevailing market rate "provide[s] merely a starting point" for determining the reasonableness of a billing rate.  *Jackson*, 696 F. Supp. 2d at 104.  The fee applicant should also submit evidence, including affidavits, regarding her counsel's general billing practices and such counsel's skill, experience and reputation.  *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326.  Once the plaintiff has met this burden, the defendant may then rebut the presumption of reasonableness by offering "specific contrary evidence." *Covington*, 57 F.3d at 1109.

In this case, the plaintiff submitted a sworn declaration from her attorney in support of her requested rates.  *See generally* Pl.'s Mot., Ex. B, Decl. of Qualifications and Experience of Individual Special Educ. Legal Providers Employed by the Chris Anwah Law Firm ("Adewusi

14

Decl."). The declaration attests to the attorneys' respective educational background, bar admission status and special education experience and training. *See generally id.* The plaintiff also notes that her attorneys' law firm has been "practicing special education law exclusively since 1997." Pl.'s Mot. at 4. Although the plaintiff did not submit evidence that described her attorneys' standard billing practices, the information that she did submit regarding their qualifications and experience in litigating IDEA cases sufficiently satisfies her burden of proving that her requested rates are reasonable. *See, e.g.*, *Alfonso*, 464 F. Supp. 2d at 6-7 (holding that the plaintiffs met their burden by "highlighting the experience and qualifications of plaintiffs' counsel's firm and the firm's long history of practice in this area of law"); *Kaseman*, 329 F. Supp. 2d at 26 (holding that the plaintiff established the reasonableness of her requested rate even though she did not attest to the "actual rates charged by lawyers who do similar work" nor to the "the reputations of plaintiffs' counsel").

By contrast, the defendants have not provided specific evidence to rebut this presumption of reasonableness, such as documentation of rates that are awarded in similar cases. *See Covington*, 57 F.3d at 1109-10 (stating that "in the normal case the [defendant] must either accede to the applicant's requested rate or provide specific contrary evidence tending to show that a lower rate would be appropriate" (citing *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326))); *Brown*, 539 F. Supp. 2d at 438 (noting that the "defendant's vague allegations that the plaintiff's amounts are 'excessive' are insufficient to bar recovery"); *Abraham v. District of Columbia*, 338 F. Supp. 2d at 124 (applying the *Laffey* Matrix where the defendant submitted no evidence to support its request to reduce rates). Because the plaintiff has met her burden of providing evidence that shows her attorneys' skill, experience and reputation, the court

15

concludes that she has established a presumption of the reasonableness of the billing rates sought in her fee application.

Accordingly, the court will evaluate each of her attorneys' respective hourly rates according to the U.S. Attorney's Office *Laffey* Matrix.[3]  In doing so, the court addresses specific objections raised by the defendants.

### i.  Samar Malik

The plaintiff seeks an hourly rate of $200.00 for Samar Malik.  Adewusi Decl. ¶ 2.  It appears that Malik was not admitted to the D.C. Bar during the period for which attorney's fees are sought.  *See id.*  The defendants thus contend that Malik's practice was not authorized. Defs.' Opp'n at 12-13.  Furthermore, even if his practice was authorized, they argue, the plaintiff has not provided sufficient evidence to suggest that Malik possesses "a level of experience and skill, or an adequate reputation" to support a $200.00 billing rate.  *Id.*

Attorneys who are not admitted to the D.C. Bar are not entitled to reimbursement at attorney rates in IDEA proceedings.  *See Dickens*, 724 F. Supp. 2d at 120; *Agapito*, 477 F. Supp. 2d at 112-13.  Accordingly, the court reduces Malik's hourly rate to $85.00, the rate charged by paralegals at the Chris Anwah Law Firm.  *See* Adewusi Decl. ¶¶ 2, 4; *Dickens*, 724 F. Supp. 2d at 120 (awarding fees below *Laffey* rates because "[a]ctual billing practices factor into a court's discretionary assessment of the reasonableness of rates").  Because this hourly rate is already lower than the paralegal rate set forth in the *Laffey* Matrix, the court need not reduce the rate any further.

---

[3]       The plaintiff seeks an hourly rate of $300.00 for Fatmata Barrie.  Adewusi Decl. ¶ 1.  The fee request contains only one charge attributable to Barrie, which the plaintiff has since conceded as non-reimbursable.  *See* Pl.'s Stmt. of Facts ¶ 9.  Accordingly, it is not necessary to determine Barrie's appropriate hourly rate.

### ii.  Mireya Amaya

The plaintiff seeks an hourly rate of $85.00 for Mireya Amaya, who is a paralegal.
Adewusi Decl. ¶ 4.  The defendants do not object to this rate.  Defs.' Opp'n at 13.  Therefore, the
court's award reflects this hourly rate for Amaya.

### iii.  Shahida Hamlett

The plaintiff seeks an hourly rate of $250.00 for Shahida Hamlett, an attorney who was
admitted to the D.C. Bar in July 2005.  Adewusi Decl. ¶ 5; Defs.' Opp'n at 13.  As noted,
attorney's fees are presumptively reasonable if they conform to the *Laffey* Matrix.  *See, e.g.*,
*Jackson*, 696 F. Supp. 2d at 102.  Hamlett performed work in February 2009, when she had been
a member of the D.C. Bar for three years.[4]  *See* Pl.'s Mot., Ex. A.  The *Laffey* Matrix rate for an
attorney with Hamlett's experience in February 2009 is $225.00.  "When the requested hourly
rates are higher than those set forth in the *Laffey* Matrix, courts generally reduce the attorneys'
hourly rates to the rates provided by the *Laffey* Matrix."  *Alfonso*, 464 F. Supp. 2d at 7.  The
court accordingly reduces Hamlett's hourly rate to $225.00.

### iv.  Christopher N. Anwah

The plaintiff seeks an hourly rate of $350.00 for Christopher N. Anwah, an attorney who
was admitted to the D.C. Bar in January 1999.  Adewusi Decl. ¶ 6.  As noted earlier, attorney's
fees are presumptively reasonable if they conform to the *Laffey* Matrix.  *See, e.g.*, *Jackson*, 696
F. Supp. 2d at 102.  Anwah performed work in December 2008 and January 2009, when he had

---

[4]     The *Laffey* Matrix calculates hourly rates based on the number of years that one has been out of
law school.  U.S. Atty's Office for D.C. *Laffey* Matrix 2003-2010,
http://www.justice.gov/usao/dc/divisions/civil_laffey_matrix_8.html (last visited Aug. 8, 2011).
Because the plaintiff does not indicate when her attorneys graduated from law school, the court
has calculated their respective appropriate hourly rates based on their respective bar admission
dates.

been a member of the D.C. Bar for ten years.  *See* Adewusi Decl. ¶ 6; Pl.'s Mot., Ex. A.  The

*Laffey* Matrix rate for an attorney with Anwah's experience in 2008-2009 is $330.00 per hour.

"When the requested hourly rates are higher than those set forth in the *Laffey* Matrix, courts

generally reduce the attorneys' hourly rates to the rates provided by the *Laffey* Matrix."  *Alfonso*,

464 F. Supp. 2d at 7.  The court accordingly reduces Anwah's hourly rate to $330.00.

### 3.  Summary of Fees Allowed

In sum, the court awards the plaintiff a total of $2,340.15 in attorney's fees and costs,

after the adjustments summarized in the chart below.[5]  According to the parties, the defendants

have already paid the plaintiff $1,202.60, leaving a total unpaid balance of $1,137.55.

| Name | Hours | Requested Hourly Rate | Adjusted Hourly Rate | Amount Allowed |
|---|---|---|---|---|
| Christopher N. Anwah | 5.70 | $350.00 | $330.00 | $1,881.00 |
| Mireya Amaya | 1.68 | $85.00 | $85.00 | $142.80 |
| Samar Malik | 5.42 | $200.00 | $85.00 | $460.70 |
| Shahidah N. Hamlett | 3.50 | $250.00 | $225.00 | $787.50 |
| | | | Fees Owed Before Any Reductions | $3,272.00 |
| | | | Fees Owed After Deducting $151.80 Conceded by Plaintiff | $3,120.20 |
| | | | **Total Awarded Fees After 25% Overall Reduction** | $2,340.15 |

---

5       The plaintiff argues that her fee award should not be affected by the $4,000.00 fee cap imposed by the District of Columbia Appropriations Act on attorney's fees awards.  Pl.'s Mot. at 6.  The defendants, on the other hand, contend that the fee award is subject to the statutory fee cap. Defs.' Opp'n at 2.  The court notes that in some instances, the District of Columbia is statutorily limited to a $4,000.00 fee cap in reimbursing attorney's fees in IDEA cases.  *See* Pub. L. No. 110-161, 121 Stat. 1844 (2007).  In this case, because the court's award of attorney's fees is less than the $4,000.00 fee cap, the court need not reach this issue.

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the plaintiff's motion for attorney's fees and costs.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 30th day of September, 2011.


RICARDO M. URBINA
United States District Judge